UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                      Case No. 06-CR-20365
                                      Honorable Thomas L. Ludington

DAMON L. STEPHENS,

          Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR RELIEF UNDER THE FIRST STEP ACT AND MOTION FOR COMPASSIONATE RELEASE WITH PREJUDICE**

On March 15, 2007, a federal jury convicted Defendant Damon L. Stephens of one count of distributing cocaine and one count of possessing cocaine base, in violation of 21 U.S.C. § 841(a)(1). ECF No. 39. He was sentenced to concurrent prison terms of 270 months for the first count and 36 months for the second count. ECF No. 69. On May 20, 2020, Defendant filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). ECF No. 108. The motion was denied without prejudice for failure to exhaust administrative remedies. ECF No. 111. On June 9, 2020, Defendant filed a *pro se* motion for a two-point reduction of his sentence pursuant to section 404 of the First Step Act of 2018. ECF No. 113. On July 27, 2020, Defendant refiled his motion for compassionate release and included documentary evidence of exhaustion. ECF No. 116. As part of his motion for compassionate release, Defendant requested the appointment of counsel. *Id.* Plaintiff, the United States of America (the "Government"), has responded to both motions. ECF Nos. 117, 121. On September 10, 2020, Defendant filed a reply brief, seemingly directed at the Government's response to his motion for compassionate release. ECF No. 126. For the reasons stated below, both of Defendant's motions will be denied, and his request for the appointment of counsel will be denied as moot.

### I.

### A.

The Anti-Drug Abuse Act of 1986 established severe penalties for the possession and distribution of cocaine base. The disparity between the penalties for distributing cocaine base and powder cocaine was dramatic: 100-to-1. As the Supreme Court observed, the Act "imposed upon an offender who dealt in powder cocaine the same sentence it imposed upon an offender who dealt in one-hundredth that amount of [cocaine base]." *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012). In 2010, Congress enacted the Fair Sentencing Act ("FSA"), Pub. L. No. 111–220, 124 Stat. 2372, which narrowed the disparity between sentences for cocaine base offenders and powder cocaine offenders. Instead of 100-to-1, it now stands at 18-to-1. In other words, the FSA imposes upon an offender who dealt in powder cocaine the same sentence it imposes upon an offender who dealt in one-eighteenth that amount of cocaine base. The FSA took effect on August 3, 2010. Among other things, the FSA reduced the statutory minimum sentences for cocaine base offenses by increasing the quantity of cocaine base necessary to trigger the minimums—raising the amount from 5 grams to 28 grams for the 5-year minimum sentence, and from 50 grams to 280 grams for the 10-year minimum sentence. *See* FSA § (2)(a).

On December 21, 2018, Congress passed the First Step Act of 2018 ("1SA"). P.L. 115-391. The law permitted the retroactive application of the FSA and the associated guideline ranges. Section 404 of the 1SA provides.

> (a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.
>
> (b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced

sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

P.L. 115-391, Section 404.

**B.**

In reviewing motions brought pursuant to the 1SA, two questions must be asked. First, an initial determination must be made about whether the defendant is eligible for a sentence reduction. In order to be eligible, the defendant must have been sentenced for a "covered offense" as defined in the 1SA prior to August 3, 2010 (the date of the enactment of the FSA). The defendant's circumstance must also not implicate one of the 1SA's limitations found in Section 404(c). This initial step is categorical and focused solely on the defendant's offense or conviction. If the defendant satisfies the initial step, the Court moves to the second question. The defendant's initial guideline range must be compared to the defendant's new guideline range as modified by the FSA. The § 3553 factors must be reviewed as well as any other relevant information to determine whether the defendant should receive a sentencing reduction.

**C.**

Defendant is not eligible for relief under the 1SA because he was not sentenced for a "covered offense." Count 1 was for distributing less than five hundred grams of cocaine. ECF No. 39. "Neither Section 2 nor Section 3 of the [FSA] altered the amount of powder cocaine required to trigger the statutory penalty ranges." *United States v. Carbe*, 797 F. App'x 901, 902 (5th Cir.

2020) (holding that sentences for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine were ineligible for reduction under the 1SA); *see also United States v. Luna*, 436 F. Supp. 3d 478, 482 (D. Conn. 2020) ("The Fair Sentencing Act did not modify the penalties for a crime involving five kilograms of powder cocaine, however, and powder cocaine offenses are therefore not 'covered offenses' for purposes of the First Step Act."). Accordingly, Defendant's 270-month sentence for Count 1 is not reducible under the 1SA.

Similarly, while Section 3 of the FSA increased the five-year mandatory minimum threshold from 5 grams of cocaine base to 28 grams, Count 2 was for possession of *less than* five grams of cocaine base. ECF No. 39. Therefore, Defendant's 36-month sentence for Count 1 is not reducible under the 1SA. Accordingly, Defendant fails to satisfy the initial step of the 1SA inquiry. His motion for relief under the 1SA will be denied.

## II.

Defendant also seeks a reduction of his sentence or a transfer to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A) (also referred to as a motion for compassionate relief), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).[1] The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

**A.**

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). Defendant is currently housed at Federal Correctional Institute, Milan ("FCI Milan") in Washtenaw County, Michigan. Defendant alleges that he sent an electronic request for compassionate release to the Warden in April 2020 but never received a response. ECF No. 116 at PageID.745. In support, he provides a copy of an electronic request he sent to the Warden on June 25, 2020 where he asks the Warden to forward him a copy of the original request. *Id.* at PageID.746. The Government concedes the

---

[1] To the extent that Defendant wants the Court to recommend home confinement to the BOP, "[d]esignation of an inmate's place of confinement, including placement in home confinement [under section 12003(b)(2) of the CARES Act], rests within the absolute discretion of the BOP." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020) (internal quotation marks omitted). As a result, "the district court has no authority to grant relief under section 12003(b)(2)." *Id.*

issue of exhaustion. ECF No. 121 at PageID.766. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of 18 U.S.C. § 3553(a). They are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--
>
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…
>
> (5) any pertinent policy statement…
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying offense is for one count of distributing cocaine and one count of possessing cocaine base, in violation of 21 U.S.C. § 841(a)(1). ECF. No. 20. Drug-related offenses are serious, and this was not Defendant's first drug-related offense. According to his Presentence Investigation Report, Defendant was convicted of cocaine-related offenses in 1993, 2002, and 2003. Furthermore, as explained in Section I.C.2. below, Defendant's lengthy

criminal history demonstrates that he would be a danger to others or the community if released. Accordingly, under the § 3553 factors, Defendant is not entitled to a sentence reduction.

## C.

The next inquiries to be resolved in addressing Defendant's motion for compassionate release are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> > (1)(A) Extraordinary and compelling reasons warrant the reduction;…
> >
> > (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Defendant has failed to demonstrate both an extraordinary and compelling reason for release and that he would not pose a danger to others or the community if released.

## 1.

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

> [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.--
>
> > (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not

required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13.

Defendant is a 46-year-old male. He claims to suffer from "asthma and other pulmonary ailments." ECF No. 108 at PageID.707. He states that "if [he] contracts [COVID-19], he most likely would die." *Id.* Defendant's medical records confirm that he was diagnosed with asthma as a child but do not disclose any recent asthma attacks. ECF No. 123 at PageID.813. As of May 2019, BOP medical staff describe Defendant's asthma as "mil[d]," "stable," and "intermittent." *Id.*

- 8 -

at PageID.815. While he is prescribed an inhaler, he does not use it daily, and his asthma does not "hinder[] [his] activity level." *Id.* at PageID.813. Defendant does not appear to suffer from any other medical conditions.

Subsection (A) of the policy statement commentary requires a defendant to demonstrate a "terminal illness" or a "serious physical or medical condition" that "substantially diminishes" his ability to provide self-care in the custodial environment. Defendant's asthma is neither a "terminal illness" nor a "serious physical or medical condition," whether considered alone or in conjunction with the risk of contracting COVID-19. Undoubtedly, Defendant's mild asthma and age put him at an elevated risk of developing the more serious COVID-19 symptoms, but a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020); *see also United States v. Brown*, No. 19-20202, 2020 WL 2812776, at *4 (E.D. Mich. May 29, 2020) ("Without satisfactory evidence that Defendant's asthma is moderate to severe, and without additional risk factors, the Court cannot conclude that Defendant's conditions of confinement currently expose him to a risk of a dire outcome from COVID-19."). Without minimizing Defendant's concerns, there is no evidence to support the contention that his present condition borders on life-threatening. Moreover, Defendant has not shown that FCI Milan lacks either the capacity or competency to address his medical needs. In fact, his medical records suggest that FCI Milan rendered timely medical care whenever Defendant required it. *See* ECF No. 123. Accordingly, Defendant's present circumstance does not satisfy subsection (A).

The other subsections in the policy statement commentary are clearly inapplicable. Defendant's situation does not qualify as "extraordinary and compelling" under subsection (B) of

the policy statement commentary because he is only 46 years old. Additionally, he does not qualify under subsection (C) because he has not alleged the death or incapacitation of a spouse or caregiver of his minor children. Accordingly, Defendant has failed to demonstrate an extraordinary and compelling reason for release consistent with the policy statement commentary.

Defendant, nonetheless, argues for the first time in his reply brief that the policy statement is a "relic" that should not bind the Court. ECF No. 126 at PageID.892. He states ten purported extraordinary and compelling reasons for release:

1. [Defendant] is asthmatic and the US Attorney is not equipped to make medical assessments of [Defendant's] CDC #1 Co-Morbidities.

2. [Defendant] served major portion of sentence already.

3. Qualifies for a reduction under First Step Act 404.

4. [Defendant] is housed in a facility that is materially misrepresenting the true nature of its facility about the COVID-19 numbers of infections and the nature of the place . . . .

5. [Defendant's] family has not been with him since 2007.

6. [Defendant] became very ill with flu-like symptoms, nearly died, lost, taste, smell, and did not run a fever, so the BOP did nothing and the virus spread and killed . . . .

7. [Defendant] has completed scores of programs and works UNICOR.

8. [Defendant] is a non-violent offender according to Congress and Judiciary not the failed BOP.

9. Legal landscape changed pursuant to career offenders.

10. [Defendant] has been diagnosed asthmatic, survived a COVID-19 attack already but will die when he gets sick again.

ECF No.126 at PageID.900–02 [sic throughout]. A reply brief "is not the proper vehicle to raise new arguments." *White v. United States*, 23 F. App'x 570, 571 (7th Cir. 2001). Furthermore, a district court is expressly required to find that a sentence reduction under § 3582 is "consistent

with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Even without the guidance of the policy statement, most of Defendant's proffered reasons do not seem extraordinary and compelling, such as his separation from family and participation in a prison labor program. Two of Defendant's allegations, however, require further attention: (1) that he already contracted COVID-19 and his next bout with the virus could be fatal; and (2) that FCI Milan is "materially misrepresenting" the extent of the COVID-19 outbreak.

Defendant allegedly developed symptoms of COVID-19 in April 2020, but "medical did not do anything" because he did not have a fever. ECF No. 126 at PageID.905. Defendant thus implies that he contracted COVID-19 and presented himself to medical staff but received no treatment. Both Defendant and the Government have filed numerous medical records for Defendant. *See* ECF Nos. 123, 124, 126. None of these records indicate that Defendant ever presented himself to medical staff complaining of "flu-like symptoms." Specifically, Defendant submitted several "sick call request" forms in April and had one clinical encounter on April 30, 2020. In each instance, however, Defendant was complaining of unrelated symptoms, like pain from a hernia surgery. *See* ECF No. 124 at PageID.859–60, 883–87.

Furthermore, assuming that Defendant's allegation is true, he has not demonstrated an extraordinary and compelling reason for release. Without minimizing Defendant's concerns, his assertion that he "will perish" when "COVID-19's second wave begins" is without support. ECF No. 126 at PageID.897–98. As discussed previously, Defendant's asthma is mild, and his medical records do not support his latest allegation that he suffered lung damage from COVID-19. Moreover, many courts have held that where a defendant has contracted COVID-19 and recovered, his health condition is not extraordinary and compelling. *See, e.g.*, *United States v. Buford*, No. 05-80955, 2020 WL 4040705 (E.D. Mich. July 17, 2020) (50-year-old male with mild asthma,

hypertension, mild kidney disease, and Type II diabetes); *United States v. Powers*, No. CR15-166 TSZ, 2020 WL 3605748 (W.D. Wash. July 2, 2020) (71-year-old male with hypertension and history of skin cancer); *United States v. Bland*, Case No. 18-20555 (E.D. Mich. May 28, 2020) (39-year-old male with Type II diabetes and hypertension); *United States v. Zubkov*, No. 14-CR-773 (RA), 2020 WL 2520696 (S.D.N.Y. May 18, 2020) (52-year-old male complaining of ongoing symptoms). Furthermore, Defendant has not shown that his risk of reinfection would be lower outside FCI Milan.

Defendant's next allegation—that the BOP is materially misrepresenting the COVID-19 outbreak at FCI Milan—is simply baseless. Undoubtedly, FCI Milan experienced a significant "first wave" with COVID-19. The virus infected 55 staff members and 86 inmates, three of which passed away. *See* COVID-19, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/8WLU-22NJ] (last visited September 21, 2020). Currently, however, the only active case at FCI Milan is in a staff member. Nonetheless, Defendant claims that "the BOP is not testing inmates as they suggest." ECF No. 126 at PageID.893. The accusation that the BOP is lying about testing inmates or otherwise misrepresenting its testing regime is a serious one. Even so, Defendant offers no evidence, and such a serious accusation cannot be supported on bare assertions alone.

Defendant's remaining allegations about FCI Milan are more relevant to an Eighth Amendment deliberate indifference claim than a motion for compassionate release. *See*, *e.g.*, ECF No. 126 at PageID.896 ("[The] steps that the BOP 'implemented' are absurd at best and fall directly in the scope [sic] of subjective recklessness . . . The BOP is deliberate [sic] indifferent . . . ."). The question here, however, is not whether the BOP has responded in a constitutionally adequate manner, but whether Defendant has an extraordinary and compelling reason for release.

To the extent that Defendant believes his constitutional rights have been violated, he should bring action upon that basis. For purposes of the present motion, Defendant's vague allegations of deliberate indifference are insufficient. Accordingly, Defendant has not demonstrated an extraordinary and compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g).

These factors support the conclusion that Defendant would be a danger to others or the community if released. According to his Presentence Investigation Report, Defendant has spent much of his adult life in prison for drug-related offenses and other crimes. In 1993, Defendant was convicted of possession of cocaine with the intent to deliver. He was sentenced to four years of

probation. He violated his probation in 1994 and, as a result, was sentenced to four to 15 years in prison. He was paroled in 1998. In 2000, Defendant was arrested for and later convicted of possession of cocaine. In 2002, Defendant was convicted of domestic violence for assaulting the mother of his child. In 2003, Defendant was convicted of delivery of cocaine and sentenced to 15 months to 30 years in prison. He was paroled in 2004 but returned to prison in October 2005 for a parole violation. His then wife had called the parole office alleging that Defendant assaulted and threatened to kill her. His parole was ultimately reinstated in December 2005 after she refused to testify at the parole violation hearing. Defendant was still on parole when, in April 2006, he committed the underlying offenses: distribution of cocaine and possession of cocaine base, in violation of 21 U.S.C. § 841(a)(1).

Defendant's conviction for domestic violence is his only violent criminal offense. Even so, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). Consequently, "drug trafficking is a serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010). Defendant's repeated drug-related offenses, some committed while he was on parole, demonstrate that he is a danger to the community and not easily deterred by supervision or the threat of criminal penalty. Defendant does not present any convincing counterarguments. Accordingly, Defendant has failed to demonstrate that he would not be a danger to others or the community if released.

**D.**

Defendant's request for the appointment of counsel is based solely on his motion for compassionate release. ECF No. 116 at PageID.749. Accordingly, Defendant's request for the appointment of counsel will be denied as moot.

**III.**

Accordingly, it is **ORDERED** that Defendant Damon L. Stephens' Motion for a Two-Point Reduction of Sentence Pursuant to the First Step Act, ECF No. 113, is **DENIED**.

It is further **ORDERED** that Defendant Damon L. Stephens' Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A), ECF No. 116, is **DENIED**.

It is further **ORDERED** that Defendant Damon L. Stephens' request for the appointment of counsel, ECF No. 116, is **DENIED AS MOOT**.

Dated: September 28, 2020                s/Thomas L. Ludington
                                         THOMAS L. LUDINGTON
                                         United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Damon L. Stephens** #26374-039, MILAN FEDERAL CORRECTIONAL INSTITUTION, Inmate Mail/Parcels, P.O. BOX 1000, MILAN, MI 48160 by first class U.S. mail on September 28, 2020.

                    s/Kelly Winslow
                    KELLY WINSLOW, Case Manager